IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA ATLAS, INC. and ATLAS ILLINOIS, INC., <br><br>     Plaintiffs, <br><br>                 v. <br><br> ANDREW L. TURNAGE, *in his Official Capacity as Executive Director of the Georgia Access to Medical Cannabis Commission*, and CHRISTOPHER EDWARDS, *in his Official Capacity as Commissioner of the Georgia Access to Medical Cannabis Commission*, <br><br>     Defendants. | Civil Action No. 1:21-cv-03520-SDG |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Georgia Atlas, Inc. and Atlas Illinois, Inc.'s Motion for Preliminary Injunction [ECF 5]; Defendants Andrew L. Turnage and Christopher Edwards's Motion to Dismiss Amended Complaint [ECF 7]; and Plaintiffs' Motion for Leave to Amend Complaint [ECF 16]. Having carefully considered the parties' briefing, and with the benefit of oral argument, the Court **GRANTS** Defendants' motion, and **DENIES** Plaintiffs' motions as moot. Because there are no facts Plaintiffs can allege that can make their federal claims viable, this action is **DISMISSED**.

I.    **Background**

For purposes of this Order, the Court treats the well-pleaded allegations of the Amended Complaint as true. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

In 2019, the Georgia General Assembly adopted the "Hope Act," which created the Georgia Access to Medical Cannabis Commission (the Commission).[1] The purpose of the Commission was to oversee licensing for in-state "cultivation, production, manufacturing, and sale" of low-THC oil to patients who are registered with the State.[2] Despite these "lofty goals," Plaintiffs contend that implementation of the Hope Act "has been hampered by the misconduct of various parties."[3] That misconduct allegedly took the form of, among other things, underfunding of the Commission; a lack of transparency; exclusion of licensing applications from coverage under the Georgia Open Records Act; a lack of technical expertise needed by the commissioners to assess applications;

---

[1]    ECF 4, ¶ 8.

[2]    *Id.*

[3]    *Id.* ¶¶ 12–13.

inconsistent evaluation of license applications; and use of a "pay-to-play" system for awarding licenses.[4]

Relying on the Hope Act, Plaintiffs spent time and money to apply for a license.[5] The Amended Complaint alleges Defendants violated Plaintiffs' constitutional rights by "intentionally failing to properly implement the Hope Act."[6] Through use of a process that lacked "transparency, objectivity, and fairness," Plaintiffs contend they were improperly denied a license.[7] By "prioritizing" minorities and Georgia corporations to receive licenses, the pleading asserts that the Hope Act discriminates against certain groups, which resulted in the wrongful denial of Plaintiffs' applications.[8] Despite this focus in the pleading, Plaintiffs' counsel during oral argument framed the true harms as the companies having to split themselves up in order to compete for a license and the inability to compete for a license on a fair playing field.[9]

---

[4]   *Id.* ¶¶ 14–19, 27–37, 47, 67.

[5]   *Id.* ¶ 43.

[6]   *Id.* ¶ 44.

[7]   *Id.* ¶¶ 44–45.

[8]   *Id.* ¶¶ 55.

[9]   ECF 18.

As their names imply, Georgia Atlas is a Georgia corporation and Atlas Illinois is an Illinois corporation.[10] Since the Hope Act requires that licenses may only be issued to in-state residents, Plaintiffs had to divide themselves and their resources to be eligible to apply.[11] According to Plaintiffs, this violates the Commerce Clause.[12] Plaintiffs also assert that, despite their substantial employment of women, they were improperly denied the benefit of this structure because Defendants removed women from the definition of "minority."[13] Without this change, Plaintiffs allege that they would have qualified for a license.[14] Finally, Plaintiffs contend that they were denied their rights under the Georgia Purchasing Act and Georgia Procurement Manual.[15] If Defendants had followed these processes, Plaintiffs assert they would have received a license.

---

[10]   ECF 4, ¶ 2.

[11]   *Id.* ¶ 57.

[12]   *Id.* ¶ 58.

[13]   *Id.* ¶¶ 67–69.

[14]   *Id.* ¶ 69.

[15]   *Id.* ¶¶ 72, 74–78.

### A.   Procedural History

Plaintiffs initiated this action on August 25, 2021.[16] On November 9, they filed the Amended Complaint and a Motion for Preliminary Injunction.[17] Defendants waived service on November 15 and moved to dismiss two days later.[18] On December 20, Plaintiffs filed, without leave, a purported Second Amended Complaint.[19] On January 14, 2022, Plaintiffs sought leave to file that Second Amended Complaint.[20] On January 20, Plaintiffs filed an affidavit in support of their preliminary injunction motion.[21] The Court heard argument on the pending motions on January 21.[22]

The Amended Complaint asserts five causes of action: under Section 1983 for violations of Plaintiffs' due process rights (Count I), right to equal protection

---

[16]   ECF 1.

[17]   ECF 4; ECF 5.

[18]   ECF 6; ECF 7.

[19]   ECF 13.

[20]   ECF 16. The motion for leave did not attach a proposed amended pleading. *Id.* Counsel for Plaintiffs confirmed during argument that they seek permission to file the Second Amended Complaint filed on December 20, 2021 [ECF 13].

[21]   ECF 17. Counsel for Defendants objected to this belated filing and asked that the Court not consider it. Because the affidavit is ultimately immaterial to the Court's ruling, Defendants' request is denied.

[22]   ECF 18.

under the Commerce Clause (Count II), rights under the Georgia Administrative Procedures Act (Georgia APA) (Count III), and contract/Georgia Purchasing Act rights (Count IV). Plaintiffs seek declaratory relief that their rights were violated or that the Hope Act is unconstitutional; a declaration that Defendants have violated the Georgia APA, the Georgia Purchasing Act, and the Georgia Procurement Manual; and, injunctive relief to enjoin "further implementation of the aforementioned policies" or enjoin the Hope Act in its entirety.[23] Lastly, although framed as a cause of action (Count V), Plaintiffs contend that the Supremacy Clause preempts the Hope Act. They ask the Court to declare that the Hope Act violates the Supremacy Clause and enjoin its enforcement.[24]

## II.    Applicable Legal Standards

Defendants seek dismissal under both Rule 12(b)(1), for lack of standing, and Rule 12(b)(6), for failure to state a claim.

### A.    Standing

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229,

---

[23]    ECF 4, ¶¶ 52, 64, 70, 80.

[24]    *Id.* ¶ 88.

1232 (11th Cir. 2008) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)). Article III of the Constitution limits federal courts to consideration of cases and controversies. U.S. Const. art. III, § 2. The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). As a result, the Court must address standing before delving into Defendants' claims of immunity. *See, e.g., Calderon v. Ashmus*, 523 U.S. 740, 745 (1998) (before reaching Eleventh Amendment immunity question, on which it granted certiorari, the court would "first address whether th[e] action . . . is the sort of 'Article III' 'case or controversy' to which federal courts are limited"); *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 873 (D.C. Cir. 1970) (ruling on standing before considering sovereign immunity arguments); *Staffin v. Cnty. of Shasta,* No. 2:13-cv-00315 JAM-CMK, 2013 WL 1896812, at *3 (E.D. Cal. May 6, 2013) (declining to reach the defendants' legislative and qualified immunity arguments because the plaintiffs could have no legally protected interest in contraband *per se*).

### B.    Failure to State a Claim

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.   Discussion

### A.   Standing

The Supreme Court has held that standing contains three elements: (1) an actual or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) likelihood that the injury will be redressed by the court. *Lujan*, 504 U.S. at 560–61. *See also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020). Standing is a necessary element of the case-or-controversy requirement, and it must exist for this Court to hear Plaintiffs' claims. *Lujan,* 504 U.S. at 560.

#### 1.   Counts I through IV

Counts I through IV are brought under Section 1983 for violations of Plaintiffs' due process rights, right to equal protection, and rights under the Georgia APA and Georgia Purchasing Act. Section 1983 is not a source of rights— it is a method to vindicate existing federal rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). When a court considers a Section 1983 claim, it must identify the specific constitutional or federal right allegedly infringed. *Graham*, 490 U.S. at 393–94; *Baker*, 443 U.S. at 140.

Defendants argue that Plaintiffs lack standing to assert these underlying causes of action because they have no legally protected interest in selling marijuana and therefore no cognizable injury.[25] Plaintiffs respond that they "clearly possessed a[ ] protected interest in the opportunity to obtain a license under the Hope Act."[26] However, they cite no authority in support of the dubious proposition that they can have a protected interest in a license to deal in contraband. Since Plaintiffs have no federal constitutional or statutory right to manufacture, distribute, or possess marijuana, they have no standing to assert their Section 1983 claims.

### i.    Injury-in-Fact

To dispense with the obvious, marijuana is a Schedule I substance under the Controlled Substances Act. 21 U.S.C. § 812, Sch. I(c)(10). "Schedule I drugs are categorized as such because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Gonzales v. Raich*, 545 U.S. 1, 14 (2005) (citing 21 U.S.C. § 812(b)(1)). Manufacturing, distributing, and possessing marijuana are prohibited by federal law. *See, e.g.*, 21 U.S.C. § 841(a).

---

[25]   ECF 7-1, at 23–25.

[26]   ECF 12, at 11.

Under *Lujan*, an injury-in-fact requires "an invasion of a **legally protected interest**." 504 U.S. at 560 (emphasis added) (citations omitted). As a result, Defendants assert that Plaintiffs cannot satisfy the injury-in-fact requirement of standing because they have no legally protected interest in growing or selling marijuana.

> **a.    Plaintiffs have no legally cognizable interest in marijuana for Section 1983 purposes.**

As a Schedule I substance, marijuana is "contraband for *any* purpose," *i.e.*, contraband *per se*. *Gonzales*, 545 U.S. at 27 (emphasis in original). Plaintiffs cannot have a legally protected interest in contraband. *Cf. United States v. Jeffers*, 342 U.S. 48, 53–54 (1951) (concluding defendant was entitled to seek suppression of illegally seized narcotics, but noting that he "was not entitled to have it returned to him" because it was contraband), *overruled on other grounds by Rakas v. Illinois*, 439 U.S. 128 (1978). In *Gonzales v. Raich*, the Supreme Court held that the Controlled Substances Act was a valid exercise of congressional power under the Commerce Clause that applied to the intrastate manufacture and possession of marijuana for medical purposes. 545 U.S. 1. Several district courts have relied on *Gonzales* to dismiss claims based on an alleged protected interest related to marijuana.

For example, in *Barrios v. County of Tulare*, a district court found that the plaintiff could not state a Section 1983 claim for violation of his due process rights where he alleged that officials seized and destroyed marijuana he was growing for personal medical use without giving him an opportunity to be heard. No. 1:13-cv-1665 AWI GSA, 2014 WL 2174746, at *4–*5 (E.D. Cal. May 23, 2014). Because he could have no protected property interest in the contraband, his Fourteenth Amendment claim necessarily failed. *Id. See also Staffin,* 2013 WL 1896812 (holding that the plaintiffs had failed to state claims under Section 1983 since no person can have a legally protected interest in contraband *per se*); *Schmidt v. County of Nev.,* 2:10-cv-3022 FCD/EFB, 2011 WL 2967786 (E.D. Cal. July 19, 2011) (concluding that the plaintiff lacked standing to press his claims for due process violations based on the seizure and destruction of marijuana he was storing and growing on his property because he lacked a cognizable property interest in the marijuana).

The *Staffin* court pointed out that California's Compassionate Use Act had "'no effect on marijuana arrests and prosecutions or searches and seizures under federal law' because '[t]he Act presents the unusual circumstance of a state law that, under limited circumstances, permits the possession of a substance deemed to be contraband under federal law.'" 2013 WL 1896812, at *5 (citing *County of Butte v. Super. Ct. of Butte Cnty.*, 175 Cal. App. 4th 729, 739–40 (2009)). Since marijuana is

contraband, Plaintiffs can have no federally protected property interest in obtaining a license to cultivate or distribute it.

Likewise, in *River North Properties, LLC v. City and County of Denver*, a district court in Colorado concluded that the plaintiff had "failed to state a cognizable claim of a constitutionally protected interest" under Section 1983 where its claim rested on "its loss of benefits from a lease with a tenant who grew medical marijuana." Civ. A. No. 13-cv-01410-CMA-CBS, 2014 WL 7437048, at *2 (D. Colo. Dec. 30, 2014). "Because marijuana is contraband *per se* under federal law, Plaintiff lack[s] a cognizable property interest in its cultivation under Section 1983." *Id.* at *3 (citing 21 U.S.C. § 881(a)(8)) (emphasis in original). District courts in Michigan and Montana have reached similar conclusions. *See Hoover v. Michigan Dep't of Licensing & Regulatory Affairs*, Case No. 19-cv-11656, 2020 WL 230136 (E.D. Mich. Jan. 15, 2020) (granting motion to dismiss claims brought by the plaintiff related to her inability to obtain medical marijuana from licensed provisioning centers; the plaintiff had no property right to medical marijuana because it is contraband for any purpose); *Marble v. Strecker,* No. CV 12-186-M-DWM, 2014 WL 1404896 (D. Mont. Feb. 26, 2014) (adopting in full report and recommendation) (noting that the plaintiff's Fourteenth Amendment Due Process claim under Section 1983

would have failed in any event because "[n]o person can have a legally protected interest in contraband per se") (citing *Schmidt*, 2011 WL 2967786, at \*5–\*6).

### 1.   Plaintiffs' Procurement Cases Are Inapposite.

Plaintiffs attempt to rely on cases involving "unsuccessful bidders for government contracts" to show that they have standing here.[27] Their counsel suggested this is a straightforward procurement action, only it involves an object "sexier" than usual.[28] Defendants distinguish the cases on which Plaintiffs rely as arising under the Administrative Procedure Act (APA).[29]

There is a more basic problem with Plaintiffs' argument. None of the cases on which Plaintiffs rely involved a party trying to obtain a license to deal in contraband or to do something flatly prohibited by federal law. *See, e.g., Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970) (concluding data processing company had standing under the APA to challenge an administrative ruling by the Comptroller of the Currency that permitted national banks to provide data processing services to their customers and other banks); *Hayes Int'l*

---

[27]   ECF 12, at 10–11.

[28]   ECF 18.

[29]   ECF 14, at 13–14.

*Corp. v. McLucas*, 509 F.2d 247, 255 (5th Cir. 1975)[30] (determining that unsuccessful bidder that challenged a contract awarded to Boeing by the Air Force allegedly in violation of procurement regulations had suffered an injury-in-fact by "virtue of its inability to obtain the contract at issue"); *Cincinnati Elecs. Corp. v. Kleppe*, 509 F.2d 1080 (6th Cir. 1975) (holding that the unsuccessful bidder for a contract with the Army for procuring radio sets, where priority was given to bidders that qualified as small business concerns, had standing to sue after it was found not to be a small business concern and the Army failed to follow the regulations established for handling protests regarding such designations). Plaintiffs have not pointed to any cases in which a plaintiff was found to have suffered an injury-in-fact in connection with a procurement process involving *contraband*.

During argument, counsel for Plaintiffs characterized the issue as the loss of the opportunity to compete fairly rather than as a failure to ultimately obtain a license.[31] While the Court commends counsel's skilled advocacy, there is no meaningful distinction between the process used to obtain the license and the object of the licensing scheme itself. Even assuming the process to which Plaintiffs

---

[30]   Decisions by the former Fifth Circuit entered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661, F.2d 1206, 1209–10 (11th Cir. 1981).

[31]   ECF 18.

were subjected was plagued with unfairness and rife with error, marijuana is still contraband. The Court fails to see how it could ever have the authority to adjudicate the fairness of a process seeking to do things that are outright forbidden under federal law. And while reasonable people can disagree about the harm in federal courts getting involved when the contraband is marijuana, such a ruling could certainly place federal courts in precarious situations if the contraband involved is more universally abhorred.

Since Plaintiffs do not have a federal constitutional or statutory right to manufacture, distribute, or possess marijuana, having been denied a license to do so by the State of Georgia is not an injury-in-fact sufficient to confer standing for their Section 1983 claims. Accordingly, Counts I through IV are **DISMISSED**.

### *b.* **Atlas Illinois**

The claims asserted by Plaintiff Atlas Illinois also suffer from the more basic defect of failing to allege any injury at all. Plaintiffs concede that Atlas Illinois cannot assert claims for alleged harm to Georgia Atlas, having failed to respond to Defendants' argument on this point.[32] *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (concluding that a

---

[32]   *See generally* ECF 12, at 7–10.

"failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned"). Defendants correctly argue that Atlas Illinois cannot achieve standing because of an injury to Georgia Atlas.[33] "[P]laintiff must assert its own rights and interests and may not rely on the rights and interests of others." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805 (11th Cir. 1993). But there are no allegations in the Amended Complaint of any injury *other* than to Georgia Atlas.[34] Plaintiffs have not pleaded any harm to Atlas Illinois at all.

Although Plaintiffs contend that they had to "divide" themselves and their resources to apply for a license, there are no allegations about how that harmed Atlas Illinois.[35] Such threadbare assertions are insufficient to plausibly establish injury. *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d at 1289. Without a plausible injury, Atlas Illinois does not have standing. *Lujan*, 504 U.S. at 560. For this independent and additional reason, Atlas Illinois' claims in Counts I through IV fail.

---

[33]   ECF 7-1, at 13–14.

[34]   *See generally* ECF 4.

[35]   *Id.* ¶ 57.

### ii.      Traceability—Atlas Illinois

Moreover, even if Atlas Illinois had properly alleged an injury-in-fact, such an injury could only relate to its inability to apply for a license because it is an out-of-state company. This still would not establish standing for causes of action based on the alleged violations of due process or Georgia rules and regulations.[36] Since Atlas Illinois could not apply for a license, it did not suffer from any of the unfairness that allegedly pervaded the process and that purportedly resulted in Georgia Atlas not obtaining a license (Count I). The same is true of the causes of action based on the Georgia APA and Purchasing Act (Counts III and IV)—if Atlas Illinois was not eligible to apply for a license it could not have been harmed by any failure to comply with these Georgia laws.[37] Any supposed injuries to Atlas Illinois would not be traceable to Defendants' alleged conduct.

### iii.     Redressability

For its causes of action based on the alleged violations of constitutional rights (Counts I and II), Plaintiffs seek the same general relief—(i) a declaration that "Defendants' acts related to the Hope Act violate[ ] Plaintiff's right[s] . . .

---

[36]   *See generally* ECF 4, ECF 13.

[37]   As discussed below, these causes of action fail for other reasons as well. *See infra* Section III.A.1.iii.

under the US Constitution, or in the alternative, that the Hope Act is unconstitutional, [and] (ii) an injunction enjoining further implementation of the aforementioned policies, or in the alternative, the Hope Act in its entirety."[38] Counts III and IV are based on alleged violations of Georgia law—the APA and the Purchasing Act. On those causes of action, Plaintiffs seek (1) a declaration that "Defendants' acts related to the Hope Act violate[ ]" these laws and (2) an injunction "enjoining further implementation of the aforementioned polic[ies]."[39] None of these alleged harms can be redressed by the relief Plaintiffs want. If the sought-after remedy cannot redress the alleged harm, an essential element of standing is lacking. *Lujan*, 504 U.S. at 560–61.

The Complaint alleges that the harm was Georgia Atlas's failure to obtain a license under the Hope Act. Plaintiffs spent "significant amounts of time, effort, and money" in this quest yet failed because Defendants allegedly "fail[ed] to properly implement the Hope Act."[40] "[B]ut for the Defendants' wrongful actions," Plaintiffs claim their applications would not have been denied.[41]

---

[38]  ECF 4, ¶ 52, 64.

[39]  *Id.* ¶¶ 70, 80.

[40]  *Id.* ¶¶ 43–44.

[41]  *Id.* ¶ 63.

The Court fails to see how declaring the Hope Act unconstitutional or finding that its implementation somehow violates Georgia law and enjoining its enforcement would in any way remedy Plaintiffs' alleged injury of not having received a license, and Plaintiffs do not point to anything making such a connection. Even if their harm were recharacterized—as it was by their counsel during oral argument—as having to create a Georgia-based company to try to obtain a license or as the inability to compete on a fair playing field, such injuries would still not be redressed by the relief Plaintiffs seek. Rather, what they seem to want is for *no one else* to receive a license since they did not get one. But taking away other entities' licenses would not redress Plaintiffs' alleged injuries.

### 2.   Count V

Count V of the Amended Complaint purports to assert a claim under the Supremacy Clause of the United States Constitution.[42] Plaintiffs allege that the Hope Act "impermissibly contradicts" the Controlled Substances Act, which "forbids the growing and cultivation of marijuana."[43] They thus contend that this conflict means the Hope Act is preempted, and that they have suffered irreparable

---

[42]   *Id.* at 18–19.

[43]   *Id.* ¶¶ 83–84.

harm and injury.[44] Defendants counter that, if Plaintiffs' argument is correct, neither one could have suffered an injury from not having received a license that cannot be issued consistent with federal law in the first place.[45] The Court need not reach the issue of whether federal law preempts the Hope Act because Plaintiffs do not have standing to raise such a claim. Neither Georgia Atlas nor Atlas Illinois can trace any alleged injuries to a conflict between federal and state law, and the remedy they seek would not address any such injuries anyway.

### i.   Traceability

Even assuming Plaintiffs could have suffered a cognizable injury-in-fact, those injuries are not traceable to any conflict between the Hope Act and the Controlled Substances Act. If the Hope Act were indeed preempted by federal law, then *no* licenses could have been issued, and both Georgia Atlas and Atlas Illinois would be in exactly the same position they are now—without a license. In fact, the Amended Complaint makes clear that Plaintiffs were injured—if at all—by alleged improprieties in the application and review process.

---

44   *Id.* ¶¶ 85, 86.

45   ECF 7-1, at 10–14.

Plaintiffs seem to argue that they have standing because the Court has the power to enjoin unconstitutional actions.[46] But this has nothing to do with whether their purported injuries are traceable to a conflict between the Hope Act and the Controlled Substances Act. The Court's power to award particular relief depends (among other things) on its power to hear the underlying dispute. If a plaintiff lacks standing, the Court lacks subject matter jurisdiction and has no authority to employ its equitable powers. *Lujan*, 504 U.S. at 560–61.

Plaintiffs also argue that they "have a vested interest in this Court opining whether or not the Hope Act is even a valid exercise of state authority, given the CSA. And more importantly, Plaintiffs' attempts to obtain a license—expending significant resources for a privilege which might not even be the State of Georgia's to bestow."[47] But no litigant has a vested right to obtain what amounts to an advisory opinion from the Court. *Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly

---

[46]   ECF 12, at 7–8.

[47]   *Id.* at 9–10.

and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.").

### ii.   Redressability

As relief for their Count V Supremacy Clause claim, Plaintiffs seek a declaration that the Hope Act is unconstitutional and an injunction prohibiting its further implementation. While styled as a separate claim, Plaintiffs' opposition to Defendants' motion to dismiss asserts that Count V is not so much a separate cause of action as "more akin to a mandamus or other direct invocation of this Court's equitable powers."[48] Regardless, the relief Plaintiffs seek would not redress their alleged injuries. The "irreparable harm" they purportedly suffered stems from not having received a license. A declaration that the Hope Act violates the Supremacy Clause would not provide Plaintiffs with one.

### B.   Failure to State a Claim (Counts III and IV)

Defendants argue that Counts III and IV, which are based on alleged violations of Georgia law and regulations, necessarily fail because Section 1983 violations must be based on deprivations of federal rights.[49] As noted above, Section 1983 is a method to vindicate existing *federal* rights. *Graham*, 490 U.S. at

---

[48]   *Id.* at 8–10.

[49]   ECF 7-1, at 9–10.

393–94; *Baker*, 443 U.S. at 144 n.3. Plaintiffs did not respond to this argument in their opposition to the motion to dismiss, and appeared to abandon those claims during the hearing.[50] Because Plaintiffs cannot base Section 1983 claims on alleged violations of the Georgia APA, the Purchasing Act, or Georgia Procurement Manual, this is yet another reason why Counts III and IV must be dismissed.

## IV.    Conclusion

In light of these rulings, the Court finds it unnecessary to reach Defendants' remaining arguments, including whether this suit is barred by immunity. Defendants' motion to dismiss is **GRANTED**. Because Plaintiffs can allege no set of facts that will give them standing, this case is **DISMISSED**. Plaintiffs' motion for a preliminary injunction and motion for leave to amend are **DENIED AS MOOT**.

**SO ORDERED** this 28th day of March, 2022.

Steven D. Grimberg
United States District Court Judge

---

[50]    *See generally* ECF 12; ECF 18.